**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>NYLES EARLMONDO JOHNSON,<br>a/k/a "FRED JONES,"<br><br>　　　　Defendant. | No. CR 06-4031-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING THE PLAINTIFF'S MOTION FOR PRELIMINARY DETERMINATION OF ADMISSIBILITY OF CERTAIN EVIDENCE AND THE DEFENDANT'S MOTION IN LIMINE** |

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *A.   The Government's Motion For Preliminary Determination Of
        Admissibility Of Certain Evidence* . . . . . . . . . . . . . . . . . . . . . 3
        *1.   The arguments of the parties* . . . . . . . . . . . . . . . . . . 4
        *2.   Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
            *a.   The state court drug conviction* . . . . . . . . . . . . . 4
            *b.   The "burglary" incident* . . . . . . . . . . . . . . . . . 6
    *B.   Defendant Johnson's Motion In Limine* . . . . . . . . . . . . . . . . . 7
        *1.   The arguments of the parties* . . . . . . . . . . . . . . . . . . 7
        *2.   Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
            *a.   "Aliases"* . . . . . . . . . . . . . . . . . . . . . . . . . 8
            *b.   References to "gangs," "gang affiliation," or "gang
                activity"* . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## I. *INTRODUCTION*

In a three-count Indictment, handed down March 23, 2006 (docket no. 1), a Grand Jury charges defendant Nyles Earlmondo Johnson, a/k/a "Fred Jones," with the following drug-trafficking offenses involving cocaine base, which is commonly called "crack cocaine." More specifically, **Count 1** charges that, from about 2005 through February 2006, defendant Johnson knowingly and unlawfully conspired with other persons, known and unknown to the Grand Jury, to distribute 50 grams or more of crack cocaine. **Count 2** charges that, on or about February 23, 2006, defendant Johnson knowingly and intentionally possessed, with intent to distribute, 5 grams or more of crack cocaine. **Count 3** charges that, on or about February 14, 2006, defendant Johnson knowingly and intentionally distributed an unspecified quantity of crack cocaine.

This matter is set for a jury trial beginning on September 18, 2006. In anticipation of trial, the government filed its September 1, 2006, Motion For Preliminary Determination Of Admissibility Of Certain Evidence (docket no. 24). On September 4, 2006, defendant Johnson filed his Motion in Limine (docket no. 25). On September 7, 2006, the government filed its response to defendant Johnson's motion in limine (docket no. 30), but defendant Johnson has not yet responded to the government's motion for preliminary determination of the admissibility of evidence, except to the extent that his own motion in limine addresses some of the same evidence. Notwithstanding the lack of a response by the defendant, the court finds that the pretrial determinations of admissibility of evidence requested by the parties should be resolved in advance of the rapidly approaching trial date. Therefore, the court will consider the parties' motions in turn.

## II. LEGAL ANALYSIS

Rule 104 of the Federal Rules of Evidence provides, generally, that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court. . . ." FED. R. EVID. 104. Such preliminary questions may depend upon such things as whether the factual conditions or legal standards for the admission of certain evidence have been met. *See id.*, Advisory Committee Notes, 1972 Proposed Rule. This rule, like the other rules of evidence, must be "construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that truth may be ascertained and proceedings justly determined." FED. R. EVID. 102. The court concludes that preliminary determination of the evidentiary questions presented in the parties' motions will likely serve the ends of a fair and expeditious presentation of issues to the jury. Therefore, the court turns to consideration of those motions in turn.

### A. The Government's Motion For Preliminary Determination Of Admissibility Of Certain Evidence

In its motion, the government seeks an order determining that the following categories of evidence are admissible at trial: (1) evidence that defendant Johnson participated in a drug-trafficking offense, possession with intent to distribute crack cocaine, on or about August 1, 2005, for which he was convicted in state court on January 5, 2006; and (2) evidence of a "burglary" charge currently pending in state court arising from a traffic stop on February 23, 2006, of a vehicle in which defendant Johnson was a passenger, in the course of which defendant Johnson fled, entered a nearby residence without permission of the residents, and attempted to induce the residents to hide him and not call the police by offering them $1,000.

### 1. *The arguments of the parties*

The government argues that evidence of the state court drug conviction, which involved the same controlled substance at issue here, crack cocaine, and in which the charged conduct occurred during the time period alleged in the present conspiracy charge, is "intrinsic" evidence of the drug conspiracy. In the alternative, the government contends that such evidence is admissible pursuant to Rule 404(b) of the Federal Rules of Evidence, because it demonstrates, at least, motive, intent, and knowledge. The defendant's own motion in limine does not incorporate a response to the government's assertion that this evidence is admissible, nor has he filed a separate timely response.

The government argues that evidence of the events surrounding the "burglary" charge is admissible to show "consciousness of guilt." In the part of his own motion in limine addressing evidence of this incident, defendant Johnson makes clear that he does *not* seek exclusion of evidence of the incident, but that he does not believe that the fact that he was charged with "burglary" arising from the event or that any reference to the incident as a "burglary" is admissible. He contends that references to the incident or the charges arising from it as a "burglary" could carry the prejudicial connotation in jurors' minds that he has been convicted of a felony and that such references are not relevant to the current charges, so that such references should be excluded under Rule 403 of the Federal Rules of Evidence.

### 2. *Analysis*

#### a. *The state court drug conviction*

As the Eighth Circuit Court of Appeals recently explained, "One of the exceptions to the general rule that evidence of other crimes committed by a defendant is inadmissible is when the proof provides the context in which the charged crime occurred—'the res gestae.'" *United States v. Fleck*, 413 F.3d 883, 890 (8th Cir. 2005) (citing *United States*

*v. Moore*, 735 F.2d 289, 292 (8th Cir. 1984)).  However, the court reiterated, "'In those cases in which we have approved the use of other crimes evidence as an integral part of the context of the crime charged, the other crime evidence was closely or inextricably intertwined with the charged crime.'" *Id.* (quoting *United States v. Forcelle*, 86 F.3d 838, 842 (8th Cir. 1996)).  "'[C]rimes or acts which are "inextricably intertwined" with the charged crime are not extrinsic and Rule 404(b) does not apply.'" *United States v. Adams*, 401 F.3d 886, 899 (8th Cir. 2005) (quoting *United States v. O'Dell*, 204 F.3d 829, 833 (8th Cir. 2000)).

The court agrees with the government that evidence of the August 1, 2005, incident and the resulting state court charge for distribution of crack cocaine is intrinsic evidence that is inextricably intertwined with the conspiracy charge in this case.  This is so, as the government argues, because the state court charge involves the same controlled substance at issue here and the same kind of criminal conduct with which the defendant is now charged with conspiring to commit within the time frame of the conspiracy alleged here.  In the alternative, as the government also contends, the evidence of the August 1, 2005, incident and the resulting state court charge for distribution of crack cocaine is admissible pursuant to Rule 404(b) of the Federal Rules of Evidence, again primarily because it involves the same controlled substance at issue here, the same conduct that the defendant is charged with conspiring to commit, and is close in time, because it demonstrates, at least, defendant Johnson's motive, intent, and knowledge. *See* FED. R. EVID. 404(b) (evidence of other "bad acts" may be admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident).  Moreover, the court finds that the government has met the requirements of Rule 404(b) for admissibility of this evidence by providing the defendant with notice, via the government's motion to admit evidence, of its intent to introduce such evidence at trial. *Id.*

5

Therefore, this evidence will be admissible.

### b. The "burglary" incident

A commentator has observed, "It is universally conceded today that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." 2 JOHN H. WIGMORE, EVIDENCE § 276, at 122 (James H. Chadbourn rev. 1979); *see also United States v. Clark*, 45 F.3d 1247, 1250 (8th Cir. 1995) (quoting this statement from WIGMORE). Even so, the Eighth Circuit Court of Appeals has explained "that the probative value and admissibility of flight evidence depends on the degree of confidence with which the fact-finder can draw four inferences: from the defendant's behavior to flight; from flight to consciousness of guilt; from consciousness of guilt to consciousness of guilt concerning the crime charged; and from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *United States v. Red Bird*, 450 F.3d 789, 793 (8th Cir. 2006) (citing *United States v. Hankins*, 931 F.2d 1256, 1261 (8th Cir. 1991), and *United States v. Chipps*, 410 F.3d 438, 449-50 (8th Cir. 2005)). Here, as to the "burglary" incident on February 23, 2006, the court finds that a reasonable factfinder could easily draw all four inferences: from defendant Johnson's run from the vehicle stop and attempt to induce the persons present in the residence that he illegally entered to conceal him to flight; from flight and attempt at concealment to consciousness of guilt of a drug-trafficking offense, particularly owing to the presence of crack cocaine in baggies in the back seat of the car, where Johnson was sitting, and outside the rear passenger door; from the same evidence, from consciousness of guilt to consciousness of guilt of the crime charged here; and from consciousness of guilt concerning the crime charged here to actual guilt of the crime charged here. Thus, the evidence of the February 23, 2006, "burglary" incident will be admissible.

On the other hand, as defendant Johnson contends in his own motion in limine, and the government concedes in its response to Johnson's motion in limine, it is not necessary for the government or any witness to refer to this incident or any charge resulting from it as a "burglary." Such a reference would be unfairly prejudicial, suggesting that defendant Johnson's conduct was a felony, potentially confusing, as it would raise the question of what constitutes a "burglary," and of little or no probative value, because it would do nothing to prove that defendant Johnson actually engaged in any conduct at issue in the present case. Therefore, the government and its witnesses will be precluded from referring to this incident or any charges flowing from it as a "burglary."

### B. *Defendant Johnson's Motion In Limine*

In his own motion in limine, in addition to moving to exclude references to the February 23, 2006, incident as or as involving a "burglary," which the court resolved above, defendant Johnson seeks to exclude two additional categories of evidence: (1) references to "Fred Jones" as an "alias"; and (2) any reference to his alleged affiliation with or membership in a "gang."

#### 1. *The arguments of the parties*

Defendant Johnson argues that any reference to "Fred Jones" as his "alias" should be excluded pursuant to Rule 403 of the Federal Rules of Evidence, because it creates a sinister impression in the minds of jurors, and as such is unduly prejudicial. Similarly, he contends that any reference to his participation in a "gang," "gang activity," or "affiliation with a gang" should be excluded pursuant to Rule 403, because such evidence adds very little, if anything, to the proof in this case, and would be unfairly prejudicial or confuse the issues, apparently, again because such references carry a sinister connotation.

7

The government responds that the defendant falsely identified himself as "Fred Jones" after fleeing from and being captured by investigating officers on August 1, 2005. The government also contends that the defendant on other occasions identified himself to law enforcement officers as "Fred Jones" and that some of the witnesses knew him as "Fred," "Freddie," or "Fred Jones." Thus, the government contends that the defendant's use of this alias is relevant and probative to show "consciousness of guilt," from concealment of identity, and to prove actual identity of the defendant as the person who committed the charged offenses. On the other hand, the government contends that it has no intention of introducing evidence or attempting to refer to "gangs" or "gang activity." Nevertheless, the government contends that some of the witnesses knew the defendant as one of the "KC Boys" or one of the "Kansas City Boys," although they did not use this reference in the sense of a traditional "gang."

### 2. *Analysis*

#### a. *"Aliases"*

As to the "alias" issue, the defendant's alias is relevant to proof of identity and to consciousness of guilt. *See* 2 JOHN H. WIGMORE, EVIDENCE § 276, at 122 (James H. Chadbourn rev. 1979) ("It is universally conceded today that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself."); *see also United States v. Clark*, 45 F.3d 1247, 1250 (8th Cir. 1995) (quoting this statement from WIGMORE). The court also finds that, where the defendant gave a false name to law enforcement officers, the necessary inferences of consciousness of guilt can be drawn in this case. *Cf. Red Bird*, 450 F.3d at 793 (identifying the necessary chain of inferences from "flight" to "consciousness of guilt" of the charged offense to make the evidence of "flight" admissible).

8

In cases involving an alleged alias for a defendant, this court gives an instruction on "aliases" based on the following authorities: *United States v. Craven*, 458 F.2d 802, 806 n.5 (D.C. Cir. 1972) (providing the model language for this instruction); *see also United States v. Morsley*, 64 F.3d 907, 911-12 (4th Cir. 1995) (evidence of aliases used by the defendant was relevant to identity of the defendant as the person who committed the crimes charged where the government asserted that the defendant used several aliases, but the defendant steadfastly maintained that he was not the same person identified by the aliases); *United States v. Danzey*, 594 F.2d 905, 914 (2d Cir. 1979) ("At a minimum, the Government must prove that this defendant committed the crime for which he is on trial, so that identity evidence may properly constitute part of its case-in-chief even if there will be a defense case."); *see generally United States v. Hines*, 955 F.2d 1449, 1454 (11th Cir. 1992) ("It is clear, however, that '[t]he use of an alias in an indictment and in evidence is permissible if it is necessary to connect the defendants with the acts charged.' In this case the Government produced substantial evidence that the appellants used all of the different names listed in the indictment and mentioned during testimony. . . . The Government connected the appellants to all of the aliases referenced at trial; it was not error to allow their use in evidence"; citations omitted); *United States v. Moya-Gomez*, 860 F.2d 706, 762 (7th Cir. 1988) ("When proof of an alias is relevant to identifying the defendant, or otherwise relates to the proof of the acts charged in the indictment, it is permissible for the prosecution to include it in the indictment," but where the government fails to prove a link between the defendant and the alias, the defendant is entitled to have the aliases stricken from the indictment and an "appropriate" instruction given to the jury); *United States v. Ramos*, 839 F. Supp. 781 (D. Kan. 1993) ("Courts generally disapprove of including aliases in the indictment as an ordinary course and believe their use 'should be curbed.' The rule most often followed is that aliases may be used when 'the Government intends

9

to introduce evidence of an alias and the use of that alias is necessary to identify the defendant in connection with the acts charged in the indictment.' If the government at trial fails to show either the defendant's use of the alias or the relevancy of the alias in proving the crimes charged in the indictment, the defendant may renew his motion to strike, and the court may strike the alias and instruct the jury appropriately"; citations omitted). The court's instruction, however, is cast in terms of "nicknames" rather than "aliases" to avoid precisely the sort of negative connotations that the defendant here fears that jurors might give to the term "aliases." The court finds that its instruction will permit proper use of evidence that the defendant used an "alias," while avoiding the potential prejudice asserted by the defendant of references to an "alias."

### b. *References to "gangs," "gang affiliation," or "gang activity"*

As to the "gang" references issue, as the Eighth Circuit Court of Appeals has explained,

> While "[e]vidence of gang membership is admissible if relevant to a disputed issue," *United States v. Lemon*, 239 F.3d 968, 971 (8th Cir.2001), gang affiliation evidence is not admissible where it is meant merely to prejudice the defendant or prove his guilt by association with unsavory characters, *United States v. Roark*, 924 F.2d 1426, 1433-34 (8th Cir.1991); *see also United States v. Bradford*, 246 F.3d 1107, 1117 (8th Cir.2001) ("To be certain, there is great potential for prejudice when evidence regarding gangs is at issue.").

*United States v. McKay*, 431 F.3d 1085, 1093 (8th Cir. 2005). Although the government represents that it will not use any references to "gangs" or "gang affiliation," the government does represent that the defendant's identity as a member of a group identified by some witnesses as the "KC Boys" or the "Kansas City Boys" is or may be relevant to a disputed issue of identity. The court agrees that references to the defendant as one of the

"KC Boys" or the "Kansas City Boys" is relevant to the potentially disputed issue of identity of the defendant as a person about whom a witness or witnesses are testifying. *Id.* For the limited purpose of proving identity and cast in terms of being one of a group—not a "gang"—identified as the "KC Boys" or the "Kansas City Boys," evidence of the defendant's affiliation with that group will be admissible and does not raise the potential for prejudice that might arise from any reference to his "gang affiliation." Therefore, the defendant's motion in limine will be granted to the extent that those limitations will be imposed.

### III. CONCLUSION

Upon the foregoing,

1. The government's September 1, 2006, Motion For Preliminary Determination Of Admissibility Of Certain Evidence (docket no. 24) is **granted**, with the limitation that neither the government nor any of its witnesses shall refer to the February 23, 2006, incident or any charges flowing from it as a "burglary."

2. The defendant's September 4, 2006, Motion in Limine (docket no. 25) is **granted in part** and **denied in part** as follows:

   a. The portion of the defendant's motion seeking to exclude references to the February 23, 2006, incident or the charges flowing from it as a "burglary" is **granted**;

   b. The portion of the defendant's motion seeking to exclude any references to any "alias" he might have is **granted** to the extent that the court will instruct the jurors on aliases, as explained above, and the government and its witnesses shall refer to any alias as a "nickname" or as a name by which the defendant was "known" or "also known," but **denied** to the extent that the defendant seeks to exclude any reference to any name by

which he was known or also known or by which he identified himself to law enforcement officers or others;

    c.    The portion of the defendant's motion seeking to exclude references to "gangs," "gang affiliation," or "gang activity" is **granted**, with the exception that the government and its witnesses shall be allowed to introduce evidence that the defendant was one of or was known as one of a "group" known as the "KC Boys" or the "Kansas City Boys."

**IT IS SO ORDERED.**

**DATED** this 11th day of September, 2006.

_____
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA