# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | No. CR06-4031-LTS |
| vs. | | |
| NYLES EARLMONDO JOHNSON, | | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | | |

---

This case is before me pursuant to defendant's motion (Doc. No. 96) to reduce sentence pursuant to the First Step Act. The Government resists. Doc. No. 100.

## I.     BACKGROUND

The FSA became law on December 21, 2018, and, relevant to this case, made the "Fair Sentencing Act of 2010" retroactive. Section 404 of the FSA provides that a court may, "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." *Id*. § 404(b); *see also* 18 U.S.C. § 3582(c)(1)(B). The FSA defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 … that was committed before August 3, 2010." *Id*. § 404(a). Section 2 of the Fair Sentencing Act modified the statutory penalties for certain violations of 21 U.S.C. 841(b) related to cocaine, effectively reducing the penalty applicable to a qualifying defendant. Specifically:

> The Controlled Substances Act sets forth three statutory penalty ranges, of 10 years to life in prison, 5 to 40 years in prison, and up to 20 years in prison, "applicable to a drug offender depending primarily upon the kind and amount of drugs involved in the offense." *Dorsey v. United States*, 567 U.S. 260, 266 (citing 21 U.S.C. §§ 841(b)(1)(A)–(C)). . . [U]ntil

2010, the 10-years-to-life statutory penalty range was triggered by a drug trafficking offense involving 50 grams or more of cocaine base, 21 U.S.C. § 841(b)(1)(A)(iii) (1993), the 5-to-40-year range by a drug trafficking offense involving 5 grams or more of cocaine base, *id.* § 841(b)(1)(B)(iii) (1993), and the 0-to-20-year range by a drug trafficking offense involving only a detectable amount of cocaine base, id. § 841(b)(1)(C) (1993). This penalty scheme treated "crack cocaine crimes as far more serious" than powder cocaine crimes, *Dorsey*, 567 U.S. at 266, "impos[ing] upon an offender who dealt in powder cocaine the same sentence it imposed upon an offender who dealt in one one-hundredth that amount of crack cocaine," *id.* at 263.

"During the next two decades, the [U.S. Sentencing] Commission and others in the law enforcement community strongly criticized Congress' decision to set the crack-to-powder mandatory minimum ratio at 100–to–1." *Id.* at 268. Thus, in 2010, well after the instant defendants' 1994 sentencings, Congress "accepted the Commission's recommendations … and enacted the" [Fair Sentencing Act] into law, *id.* at 269, "reducing the crack-to-powder cocaine disparity from 100–to–1 to 18–to–1," *id.* at 264. Specifically, [Fair Sentencing Act's] section 2, titled "Cocaine Sentencing Disparity Reduction," provides, in full:

> (a) CSA.—Section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) is amended
> (1) in subparagraph (A)(iii), by striking "50 grams" and inserting "280 grams"; and
> (2) in subparagraph (B)(iii), by striking "5 grams" and inserting "28 grams".
> (b) IMPORT AND EXPORT ACT.—Section 1010(b) of the Controlled Substances Import and Export Act (21 U.S.C. 960(b)) is amended—
> (1) in paragraph (1)(C), by striking "50 grams" and inserting "280 grams"; and
> (2) in paragraph (2)(C), by striking "5 grams" and inserting "28 grams".
> FSA, Pub. L. 111-220, § 2, 124 Stat. 2372. 2372 (2010).

*United States v. Antone White, et al.*, 2019 WL 3719006, at *9 (D.D.C. Aug. 6, 2019).

On January 29, 2019, I entered an order (Doc. No. 95) appointing the federal public defender to represent the defendant and directing the defendant to file a motion pursuant to the FSA. On February 11, 2019, the defendant filed a motion requesting a reduction in his sentence pursuant to the FSA. Doc. No. 96. On March 1, 2019, the Government filed a response opposing any sentence reduction. Doc. No. 100. On March 22, 2019, the defendant filed a reply. Doc. No. 103. On March 29, 2019, the Government filed a supplement. Doc. No. 104. On April 5, 2019, the defendant filed a final response. Doc. No. 105.

## II. ORIGINAL SENTENCE

On March 23, 2006, defendant was indicted on three counts related to the distribution of crack cocaine. Doc. No. 1. On September 14, 2006, defendant pled guilty to all three counts pursuant to Rule 11(c)(1)(C) plea agreement.[1] Doc. Nos. 43, 45. Specifically, defendant pleaded guilty to distributing 50 grams or more of crack cocaine and admitted to participating in the distribution of at least 250 grams of cocaine. Doc. No. 40-1. The presentence investigation report (PSIR) attributed 347.2 grams of crack to the defendant. Doc. No. 53. The PSIR found a total offence level 31 and a criminal history category II, resulting in a guideline of 121 to 151 months.[2] On January 3, 2007, the court imposed the 200-month sentence stipulated in the plea agreement. Doc. No. 52. The court also imposed a five-year term of supervised release. *Id*.

Subsequently, the court denied the defendant a sentence reduction pursuant to various guideline changes, including Amendment 750 (implementing the Fair Sentencing Act) and Amendment 782 (All Drugs Minus Two). *See* Doc. Nos. 58, 64, 73, 79 and

---

[1] I only recount the facts relevant to the controlling charge, Count 1.

[2] Pursuant to the plea agreement, the Government withdrew a 21 U.S.C. § 851 notice.

93. In denying the motions, the court relied on the parties' Rule 11(c)(1)(C) agreement. *See, e.g.*, Doc. No. 93 at 3-4, stating:

> Here, the court is unable to rely on Amendment 782 (subject to subsection (e)(1)) to reduce the defendant's sentence under 18 U.S.C. § 3582(c)(2) and USSG §1B1.10. *See generally United States v. Curry*, 584 F.3d 1102, 1104 (8th Cir. 2009) (discussing *United States v. Wyatt*, 115 F.3d 606, 608-09 (8th Cir. 1997)) (explaining requirements under USSG §1B1.10(b)). Because the parties entered into an agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) and the defendant's sentence is predicated on an agreed upon sentence rather than a sentencing range, relief under 18 U.S.C. § 3582(c)(2) is not available to the defendant. *See United States v. Williams*, 598 F.3d 963, 965 (8th Cir. 2010) (holding 18 U.S.C. § 3582(c)(2) does not apply because court imposed sentence in accordance with Federal Rule of Criminal Procedure 11(c)(1)(C)); *see also Freeman v. United States*, ___ U.S. ___, ___, 131 S. Ct. 2685, 2692-2700 (2011) (requiring a court to determine whether an agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) expressly uses a guideline range applicable to the charged offense to establish the term of imprisonment); *United States v. Long*, 757 F.3d 762, 764 (8th Cir. 2014) (applying *Freeman*). Accordingly, the court concludes that a reduction under 18 U.S.C. § 3582(c)(2) and USSG §1B1.10 is not justified.

Defendant has been in federal custody since June 7, 2006. *See* PSIR 6. According to the BOP time computation, submitted by defendant, he had served approximately 160 months as of February and has earned approximately 10 months of good time credit.

### III.   FSA APPLICABILITY

The parties agree that defendant is potentially eligible for relief because:

> defendant was charged by Indictment in March 2006, with three separate crack cocaine related crimes. (Docket # 1). In Count 1, defendant was charged with conspiracy to distribute 50 grams or more of crack cocaine, after a prior felony drug conviction, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and 851. (*Id.*). In Count 2, defendant was charged with the possession with intent to distribute 5 grams or more of crack cocaine, after a prior felony drug conviction, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 851. (*Id.*). In Count 3, defendant was charged with the

distribution of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (Id.). Defendant pled guilty to all of these counts pursuant to a Rule 11(c)(1)(C) plea agreement, with the government withdrawing its 851 notice, and defendant was later sentenced to the agreed-upon 200-month sentence. (Docket # 40, 45, 52). Section 2 of the FSA 2010 changed the statutory penalties associated with the federal crimes set forth in Counts 1 and 2, and defendant committed the offenses prior to August 3, 2010. Therefore, defendant was convicted of a "covered offense."

Doc. No. 100 at 5-6. Additionally, if the Fair Sentence Act of 2010 had been in effect when defendant was sentenced, defendant's guideline range would have been reduced. Even using the quantity most favorable to the Government's argument, the 347 grams attributed to the defendant in the PSIR, the defendant's total offense level would be 27, for a guideline range of 78 to 97 months.

However, as will be discussed more below, the parties disagree about the statutory sentence range. The defendant argues that the statutory range is controlled by the quantity charged. He notes that he was charged under 21 U.S.C. § 841(b)(1)(A) with conspiracy to distribute 50 grams or more of crack and that the Fair Sentencing Act increased the minimum threshold for a (b)(1)(A) offense to 280 grams while amending the range for a (b)(1)(B) offense to 28 grams or more. Thus, post-Fair Sentencing Act, a charge of 50 grams or more of crack, but less than 280 grams, is punishable by a mandatory minimum sentence of 5 and a maximum of 40 years. *See* 21 U.S.C. § 841(b)(1)(B).

The Government notes that the presentence report, which was adopted at sentencing, found a quantity greater than 280 grams. Thus, the Government contends, even had the Fair Sentencing Act applied at the time defendant was charged, he would have been charged under (b)(1)(A) and his statutory penalties would have remained the same. Among other things, defendant would still have been subject to a ten-year mandatory minimum sentence on Count 1, rendering him ineligible for relief.

## IV.   PARTIES' PLEADINGS

### A.   Defendant's Opening Brief

In his supporting brief, defendant argues that he is entitled for relief.  Specifically,

> Under the FSA, 50 grams or more of crack is punishable by a mandatory minimum sentence of 5 and a maximum of 40 years. 21 U.S.C. § 841(b)(1)(B).  Even if the court uses the 347 grams attributed by the PSR, a post-FSA guideline would have only been 32, which would have resulted in a TOL of 29, at CHC II, equaling 97-121 months.  USSG § 2D1.1(c)(4) (2011).  Under the current guidelines, the defendant's BOL would be 30, and his TOL would be 27, for a guideline range of 78-97 months.  Of course, that sentencing range would effectively become 120 months.  USSG § 5G1.1(b).  The fact that a concurrent 20-year sentence was imposed on count 3, in which the defendant was charged under § 841(b)(1)(C), is not a bar to relief. Although FSA 2010 did not amend (b)(1)(C), the court was merely following the guidance contained in § 5G1.2(b) of the guidelines.  Under the guidelines, all three counts were grouped together for purposes of determining the defendant's total punishment. USSG § 3D1.2(d). (PSR 23).

Doc. No. 96-1 at 5.  Defendant did not anticipate the Government's objection based on the disparity between the charged quantity and the quantity determined at sentencing.  However, defendant did anticipate the Rule 11(c)(1)(C) argument, stating:

> [the] Rule 11(c)(1)(C) plea agreement [does not] preclude a reduction under Section 404 of the First Step Act.  The agreement, which was accepted by the court, allowed the parties to avoid a 240-month mandatory minimum sentence, one of the "disproportionally harsh sentences imposed for crack cocaine offenses." *United States v. Tucker*, 2019 WL 324423, at *2 (S.D. Iowa, Jan. 23, 2019).  An argument that defendant's sentence was only the result of the 11(c)(1)(C) plea agreement, and not of the statutory scheme that predated the FSA 2010, ignores the overall sentencing framework for crack offenses. *See Hughes v. United States*, 138 S. Ct. 1765, 1775 (2018). (In context of 18 U.S.C. § 3582(c)(2), a sentence imposed under an 11(c)(1)(C) plea agreement was based on guideline range, as required for sentence reduction eligibility, if that range was part of the framework the sentencing court relied on in imposing sentence or accepting agreement).

Doc. NO. 96-1 at 5-6.  Accordingly, defendant requests that his sentence be reduced to a term of "time served" with four years of supervised release to follow.

## B.    Government's Resistance

In response, the Government argues:

> defendant fails to show that application of the FSA 2010 crack cocaine thresholds would have "resulted in a sentence lower than the defendant's original sentence." *United States v. Copple*, 2019 WL 486440, *1 (S.D. Illinois, Feb. 7, 2019).  First, although defendant admitted in the plea agreement only that he was responsible for "at least" 250 grams of crack cocaine, defendant did not contest the presentence report's finding that he was responsible for 347.2 grams of crack cocaine. (PSR ¶ 18).  According to the Statement of Reasons, the Court adopted the presentence report without change. (Docket # 53-1).  Therefore, there was a judicial finding that defendant was responsible for 347.2 grams of crack cocaine in the conspiracy—far more than the 280 gram threshold put into place by the FSA 2010...  In a similar context, in assessing eligibility for a reduced sentence under 18 U.S.C. § 3582(c)(2) based on a retroactive guideline amendment, courts denied relief upon concluding that the offense involved a drug quantity supporting the same offense level both before and after the amendment. *See, e.g., United States v. Anderson*, 707 F.3d 973, 975 (8th Cir. 2013).  For similar reasons, the Court should deny relief here, because the offense involved a drug quantity supporting the same statutory penalties both before and after the FSA 2010.

Doc. No. 100 at 10.  The Government goes onto argue that the holding of *Alleyne v. United States*, 570 U.S. 99 (2013) is not applicable in this case.[3]  Thus, the Government reasons, I can rely on the sentencing court's determination that the defendant was liable for 347.2 grams of crack.  According to the Government:

> It would be erroneous for the Court to apply *Alleyne* in determining whether defendant is eligible for a sentencing reduction, and would effectively place this defendant in a better position than a defendant who committed a crime

---

[3] *Alleyne* stated that all facts that increase a mandatory minimum sentence must be plead in the indictment and either found by a jury or admitted to as part of the plea.

the day after the FSA 2010 thresholds were in effect, but before *Alleyne* was decided. "For *Alleyne*'s rule to apply here, *Alleyne* itself would have to apply retroactively." *Thompson v. Roy*, 793 F.3d 843, 846 (8th Cir. 2015) (overruled on other grounds). The Eighth Circuit has held that Alleyne does not apply retroactively. *Walker v. United States*, 810 F.3d 568, 574 (8th Cir. 2016). To put it plainly, defendant's mandatory minimum would be lower today only due to *Alleyne* and not due to the change provided by section 2 of the FSA 2010. Because the First Step Act only makes section 2 of the FSA 2010 retroactive, the Court should not grant relief in this case. Indeed, the First Step Act only directs the court to examine a sentence as if Sections 2 and 3 of the FSA 2010 were in effect at the time, not to change the manner of determining quantity. And such a determination at this time does not offend *Apprendi* or *Alleyne*, as it does not involve any increase in a sentence based on judge-found facts. To the contrary, the First Step Act only authorizes a court to "reduce" a sentence.

Doc. No. 100 at 11-12.

The Government makes two additional arguments regarding the Rule 11(c)(1)(C) plea agreement. First, the Government argues that because defendant was sentenced above the statutory mandatory minimum, there "is no basis to conclude that his sentence would have been any different if there was instead a five year 'floor.'" Doc. No. 100 at 13. Second, citing *Hughes v. United States*, 138 S. Ct. 1765 (2018), the Government acknowledges that a plea agreement does not preclude a guidelines reduction based on an amendment change which is made retroactive, but states:

the Court should consider that the government withdrew its 851 notice in exchange for the agreed upon 200-month sentence. Had the government not withdrawn the 851 notice as required by the plea agreement, defendant would have faced a 20-year mandatory minimum sentence under § 841(b)(1)(A) at the time of initial sentencing. This was a significant concession by the government as part of the plea negotiations. Even if the Court finds that the plea agreement does not bar defendant from filing the instant motion, the Court should consider that the plea agreement (and the lower statutory penalties that resulted) was a result of a bargained-for agreement between the parties, and that defendant reaped a substantial benefit from the agreement.

8

Doc. No. 100 at 13-14.

## C.   *Defendant's Reply*

In his reply brief, defendant addresses each of the Government's arguments.  First, defendant agrees that the plea agreement contained an appeal waiver:

> Nestled at the end of a sentence referencing "actions pursuant to 28 U.S.C. §§ 2255 and 2241, and coram nobis actions, and motions to reconsider," are the words "reduce his sentence." Until the First Step Act of 2018, Congress has never made a statutory change to a criminal statute retroactive. There is no reason to believe that the defendant would have understood the words "reduce his sentence" to refer to anything other than a retroactive guideline amendment, if he understood these words at all.

Doc. No. 103 at 3.  However, defendant compares this situation with other common post-conviction motions and states:

> The waiver language at issue here, in contrast to the language waiving the right to pursue collateral relief, does not refer to any procedural vehicle, *e.g.*, a § 2255 motion, commonly used to pursue such relief. There is no reference to 18 U.S.C. § 3582(c)(2) or § 3582(c)(1)(B).  Pro se defendants frequently file motions captioned as motions to reduce sentence when they are really trying to file § 2255 motions.  The inclusion of motions to reduce sentence within the litany of remedies recited in paragraph 21 of the plea agreement could be construed as simply a reference to another variant of a § 2255, § 2241, or coram nobis.  There is certainly nothing in paragraph 21 that would put a defendant on notice that he was waiving the right to seek relief if Congress took the highly unusual step of making a pre-existing ameliorative statute retroactive.  This lack of specificity creates uncertainty about the meaning of the three critical words.  Such uncertainty should be construed against the government because such agreements "are normally drafted by the government and involve significant rights of a defendant." *United States v. Andis*, 333 F.3d 886, 890 (8th Cir. 2003).

Doc. No. 103 at 3.  Accordingly, defendant argues "for a waiver to be enforceable, there must be an intentional abandonment of a known right.  *United States v. McBride*, 826 F.3d 293, 295 (6th Cir. 2016) (quoting *United States v. Olano*, 507 U.S. 725, 733

(1993)).ʺ  Defendant states that when he entered into the waiver, he did not contemplate a statutory change such as the FSA.

Second, defendant argues that the plea was "based" on the guidelines for purposes of *Hughes*:

> This is not a case where the government is arguing that the defendant's disciplinary record in prison, the facts and circumstances of his original case, or his lack of rehabilitative efforts warrants denial of relief. Rather, the government's argument centers on the premise that the defendant already received a substantial benefit through his plea bargain. The government suggests that "the ten year 'floor' had no impact on defendant's sentence because his sentence was well above it anyway." (Doc. 100, p. 13). The government's argument ignores the fact, acknowledged earlier in the government's response, that the defendant's original guideline calculation placed him in a range of 121-151 months, and that under the current guidelines his sentencing range would be 78-97 months. (Doc. 100, p. 9, Table).  Moreover, the government fails to acknowledge that defendant's plea was intended to avoid the extremely harsh consequences of a 20-year mandatory minimum sentence which would have applied if the government had not agreed to withdraw its 851 notice. The defendant's bargain was a good deal only in the context of the overly harsh sentencing scheme that applied to crack cocaine offenders. Under FSA 2010, the defendant would no longer be facing the 20-year mandatory minimum sentence, the threat of which induced defendant to accept a prison term that was 79 months higher than the bottom of the guideline range he was facing at his original sentencing.

Doc. No. 103 at 10-11.

Finally, the defendant rebuts the Government's argument that the drug quantity found at sentencing, and the quantity charged, controls.  Specifically:

> The drug quantities defendant pled guilty to – at least 50 grams in count one and at least 5 grams in count two – would only trigger statutory ranges of 5 to 40 years, and 0 to 20 years, respectively, rather than 10 to life, and 5 to 40 years, as they did at his original sentencing.  The government, however, insists that the amount of crack attributed to the defendant by the PSR – 347.2 grams – can be used instead. (Doc. 100, p. 10). The government is correct that there was a judicial finding that defendant was responsible for 347.2 grams, but overlooks the fact that the court's finding

10

was only made by a preponderance of the evidence, and was only for the purpose of calculating defendant's guideline range.

Doc. No. 103 at 4-5. Defendant then cites a variety of cases in which district courts have found that the charged quantity controls. *See e.g., United States v. Davis*, 2019 WL 1054554, *1 (W.D.N.Y., Mar. 6, 2019), *United States v. Lagurre*, 2019 WL 861417, *3 (W.D. Va., Feb. 28, 2019), *United States v. Fleurival*, No. 5-06-cr-00041-004, ECF No. 1181, p. 6489 (W.D. Va., Feb. 6, 2019). Defendant states:

> The government suggests that using drug quantities determined by the PSR to establish statutory threshold amounts was permissible when the defendant was sentenced because the Supreme Court had not yet decided *Alleyne v. United States*, 570 U.S. 99 (2013). (Doc. 100, p. 10). In other words, the government is arguing that since a method for determining drug quantity, a method now clearly erroneous in light of *Alleyne*, was practiced by courts when the defendant was originally sentenced, that *Alleyne* should be ignored when determining eligibility under the First Step Act. In *United States v. Glore*, 2019 WL 1060838, *6 (Mar. 6, 2019), the court rejected the same argument. The court's emphatic rejection of this argument is soundly based. The government's argument should be rejected because it violates the constitutional principles elucidated in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne*.

Doc. No. 103 at 6. Defendant concludes:

> The drug quantity that sets the "statutory penalty" under Section 404 is the quantity charged as an element in the indictment, and found as an element by a jury beyond a reasonable doubt or admitted as an element in a guilty plea. It is not the quantity alleged in the PSR, stated in a plea agreement, or found by the judge at sentencing. *See Alleyne v. United States*, 133 S. Ct. 2151 (2013); *Apprendi v. New Jersey*, 530 U.S. 466 (2000). . . While courts have held that *Alleyne* and *Apprendi* are not retroactive "on collateral review" because they are procedural rather than substantive within the meaning of *Teague v. Lane*, that distinction has no bearing on the "relief sought" under Section 404. *Danforth*, 552 U.S. at 271. Instead, *Apprendi* and *Alleyne* apply because "the source of [those rules] is the Constitution itself," and "the underlying right necessarily pre-exist[ed] [the Supreme Court's] articulation of the new rule." *Id.*

Doc. No. 103 at 7.

### D.    *Government's Supplemental Response*

In its final pleading (Doc. No. 104), the Government argues that cases cited by the defendant finding the charged quantity, rather than the quantity found at sentencing, controls, are distinguishable from the present case.  The Government also argues:

> The opinion in *Potts*, and the government's argument in this case, is supported by other opinions in the 18 U.S.C. § 3582(c) context.  In *United States v. Saeed-Watara*, 638 F. App'x 483, 484-85 (6th Cir., Jan. 28, 2016) (unpublished), the Sixth Circuit held that the district court had no authority to consider *Alleyne* in a motion under § 3582(c)(2).  Defendant's argument that the Court should apply *Alleyne* because "using uncharged judge-found facts by a preponderance to increase a statutory range was always unconstitutional" fails for the reasons cited in *Saeed Watara* when it rejected defendant's argument that, in a post-*Alleyne* sentence reduction proceeding, a mandatory minimum based on judge-found drug quantity could not be constitutionally applied.  *Id.*  ("The argument is not without facial appeal, but the fallacy resides in the final phrase . . . [a] § 3582(c)(2) sentence modification is not a resentencing" . . . and "represents a congressional act of lenity.").  Other cases have also found that *Alleyne* is not applicable in § 3582(c)(2) sentence reduction proceedings.  *See United States v. Ledesma*, 538 F. App'x 836 (10th Cir., Oct. 17, 2013) (unpublished).

Doc. No. 104 at 3-4.

### E.    *Defendant's Sur-Reply*

In his sur-reply, Defendant rebuts the Government's attempt to distinguish the caselaw and states:

> the government invokes case law, albeit unpublished decisions from other circuits, holding that a district court considering a motion to reduce because of a retroactive guideline amendment under 18 U.S.C. § 3582(c)(2), has no authority to consider *Alleyne* or, indeed, any current case law. (Doc. 104, pp. 3-4).  Of course, under § 3582(c)(2) the court's authority is strictly cabined by its reference to the applicable policy statements issued by the

Sentencing Commission.  Those policy statements include the admonition that proceedings under § 3582(c)(2) "do not constitute a full resentencing of the defendant." USSG §1B1.10(a)(3).  The defendant, however, is not seeking relief under (c)(2), but rather under (c)(1)(B).  Section 404 of the First Step Act created an independent, freestanding remedy that authorizes district courts to impose a reduced sentence for covered offenses.  It contains no reference to the restrictive policy statements contained in the U.S. Sentencing Guidelines that apply when considering reductions for retroactive guideline amendments under § 3582(c)(2).  Section 3582(c)(1)(B) does not authorize or restrict anything in and of itself, and it does not establish any procedures a court must follow when it imposes a reduced sentence.  In fact, there is no language in Section 404 whatsoever that indicates Congress intended to restrict the ameliorative provisions of this statute in the same way that it elected to restrict the application of retroactive guideline amendments.

Doc. No. 105 at 6-7.  The defendant concludes:

For all the foregoing reasons, the defendant requests that the court reduce his sentence to a term of 160 months on all counts, followed by a term of supervised release of four years. This should result in the defendant's immediate release from BOP custody, subject to the 10-day delay requested by the government for orderly processing by the BOP.

Doc. No. 105 at 7.

## V.     ANALYSIS

### A.     *Covered Offense*

At the outset, a couple of things are clear.  First, the FSA is a relatively unprecedented piece of legislation, as its express purpose is to lower previously-imposed criminal sentences.   Accordingly, there is scant precedent, other than the few district court rulings that have issued over the past eight months, to guide this court when dealing with issues arising under the FSA.   Second, because the FSA is a novel piece of legislation, none of the analogies to other sentencing issues, such as a guideline reduction pursuant to 18 U.S.C. § 3582(c)(2), are perfectly on point.

With that as prologue, the first issue disputed by the parties is whether defendant in this case committed a "covered offense." As noted above, a "covered offense" is a violation of a federal criminal statute, the statutory penalties for which were modified by Section 2 or 3 of the Fair Sentencing Act of 2010. The parties agree that defendant committed an offense that could be subject to the FSA – he committed a crack cocaine offense before 2010 – but the Government disputes whether the Fair Sentencing Act would have reduced defendant's sentence. The Government argues that the quantity admitted to at sentencing, over 280 grams, would have "independently triggered the § 841(b)(1)(A) penalties for Count 1" even under the Fair Sentencing Act. Doc. No. 100 at 11.

Defendant's counter argument is two pronged. First, defendant argues, a "covered offense" refers to an offense, which means a violation of a statute. The FSA makes the Fair Sentencing Act retroactive and the Fair Sentencing Act "increased the drug amounts triggering mandatory minimums for crack trafficking offenses from 5 grams to 28 grams in respect to the 5-year minimum and from 50 grams to 280 grams in respect to the 10-year minimum." *Dorsey v. United States*, 567 U.S. 260, 269 (2012). The statute the defendant violated dealt with selling fifty grams or more of crack cocaine. *See* Doc. No. 1 at 1. That is the offense to which he plead guilty. Doc. Nos. 43 and 48. That sentence associated with that offense was reduced by the Fair Sentencing Act. According to defendant, the conduct determined at sentencing – involving 347.2 grams of crack cocaine – is not a factor to be considered because it has nothing to do with the charged offense. Accordingly, defendant is eligible for relief.

Second, even if this situation should be analogized to a guideline reduction pursuant to 18 U.S.C. § 3582(c)(2), defendant states that *Apprendi* and *Alleyne* should apply. While conceding that under *Teague v. Lane*, 489 U.S. 288 (1989), *Apprendi* and *Alleyne* are not retroactive in regard to a previously decided case/dispute, defendant

argues that that distinction has no bearing on a FSA reduction because it is a new statutory right. *See Danforth v. Minnesota*, 552 U.S. 264, 271 (2008), stating:

> we note at the outset that the very word "retroactivity" is misleading because it speaks in temporal terms. "Retroactivity" suggests that when we declare that a new constitutional rule of criminal procedure is "nonretroactive," we are implying that the right at issue was not in existence prior to the date the "new rule" was announced. But this is incorrect. As we have already explained, the source of a "new rule" is the Constitution itself, not any judicial power to create new rules of law. Accordingly, the underlying right necessarily pre-exists our articulation of the new rule. What we are actually determining when we assess the "retroactivity" of a new rule is not the temporal scope of a newly announced right, but whether a violation of the right that occurred prior to the announcement of the new rule will entitle a criminal defendant to the relief sought.

Defendant contends he is not seeking relief from a previous constitutional violation, which would be denied by the *Teague* analysis, *see Walker*, 810 F.3d at 574, but instead wants the FSA, enacted 2018, applied in a way that comports with the constitutional right "articulat[ed]" in *Apprendi* and *Alleyne*.

Both parties are correct that various courts have ruled in favor of their arguments. However, I agree with defendant that using the charged quantity to determine if the FSA applies is the more compelling argument. As a district court recently stated:

> No court of appeals has ruled on how to determine eligibility under § 404 of the First Step Act. As far as this court's research can determine, every judge in this district who has ruled on the issue has rejected the government's position. *United States v. Wright*, 2019 WL 3231383, at *3 (N.D. Ill. July 18, 2019) (Castillo, J.); *United States v. Johnson*, 2019 WL 2590951, at *3 (N.D. Ill. June 24, 2019) (Leinenweber, J.); *United States v. Booker*, 2019 WL 2544247, at *2 (N.D. Ill. June 20, 2019) (Lefkow, J.). Some district courts have reached the contrary conclusion, but "the weight of authorities" hold that "in determining whether a defendant is eligible for relief under § 404 of the First Step Act, the sentencing court should look to whether the offense of conviction was modified by the Fair Sentencing Act of 2010," and not to the conduct of the defendant. *Wright*,

2019 WL 3231383, at *3 (collecting cases); *accord Johnson*, 2019 WL 2590951, at *2.

This court finds the weight of authority persuasive and adopts the reasoning of cases holding that eligibility under § 404(b) of the First Step Act is determined with reference to the offense charged. As several cases have explained, the government's approach "effectively requires the Court to employ a prosecutor-friendly 'way-back machine' to conjure how the charge, plea, and sentencing would have looked had the Fair Sentencing Act of 2010 been in effect." *United States v. Pierre*, 372 F. Supp. 3d 17, 22-23 (D. R.I. 2019) (quoted in *Wright* and *Johnson*).

*United States v. James Cross*, 2019 WL 3718768, at *2 (N.D. Ill. Aug. 7, 2019). As numerous courts, including in the Southern District of Iowa, have noted, Congress specifically referred to the offense charged in the statutory language of the FSA. *See United States v. Dodd*, 372 F. Supp. 3d 795, 797 (S.D. Iowa 2019). If Congress wanted courts to consider other conduct, rather than the charged offense, it could have stated that. Accordingly, I agree with the defendant that he is eligible for relief because he was charged, and pled guilty to, distributing 50 grams or more of cocaine base. *See e.g. United States v. Simons*, 375 F. Supp. 3d 379 (E.D.N.Y. 2019); *United States v. Allen*, 384 F. Supp. 3d 238, 242 (D. Conn. 2019) (suggesting the rule of lenity also favored this outcome). Of course, being "eligible for relief" does not mean relief is automatically appropriate. That issue requires further discussion.


**B.    *Plea Agreement***

The Government's second argument is that the plea agreement disqualifies defendant from relief. Under this argument, the first question is whether the plea agreement's appeal waiver precludes defendant's motion. Generally, in the context of *Hughes*-type Rule 11(c)(1)(C) guideline reductions, courts enforce plea waivers against defendants seeking relief if the waiver explicitly contemplated a guidelines reduction. *United States v. Eichel*, 2019 WL 2524072, at *1 (M.D. Tenn. June 18, 2019). In this

case, defendant's appeal waiver does not explicitly contemplate a sentence reduction pursuant to a statutory change in the sentencing range. Accordingly, I agree with defendant that he did not knowingly waive his right to apply for a sentence reduction pursuant to the First Step Act. *See, e.g., United States v. Andis*, 333 F.3d 886, 890 (8th Cir. 2003) (appeal waivers must be knowing and voluntary). Alternately, even if defendant waived his right to file this motion, I consider, on my own motion, whether defendant is eligible for a reduction pursuant to the FSA act. *See* First Step Act § 404(b).

The more complicated question is the effect of the Rule 11(c)(1)(C) plea deal. As agreed by the parties, *Hughes*, decided last year, stands for the proposition that a defendant who pleaded guilty pursuant to a Rule 11(c)(1)(C) agreement is entitled to a guideline reduction pursuant to § 3582(c)(2) because the sentence imposed is still based on the guidelines. As the Supreme Court stated:

> A sentence imposed pursuant to a Type–C agreement is no exception to the general rule that a defendant's Guidelines range is both the starting point and a basis for his ultimate sentence. Although in a Type–C agreement the Government and the defendant may agree to a specific sentence, that bargain is contingent on the district court accepting the agreement and its stipulated sentence. *Freeman*, 564 U.S., at 529–530, 131 S. Ct. 2685. The Sentencing Guidelines prohibit district courts from accepting Type–C agreements without first evaluating the recommended sentence in light of the defendant's Guidelines range. USSG § 6B1.2(c). So in the usual case the court's acceptance of a Type–C agreement and the sentence to be imposed pursuant to that agreement are "based on" the defendant's Guidelines range.

*Hughes*, 138 S. Ct. at 1776. However:

> If the Guidelines range was not "a relevant part of the analytic framework the judge used to determine the sentence or to approve the agreement," *Freeman, supra*, at 530, 131 S. Ct. 2685, then the defendant's sentence was not based on that sentencing range, and relief under § 3582(c)(2) is unavailable. And that is so regardless of whether a defendant pleaded guilty pursuant to a Type–C agreement or whether the agreement itself referred to a Guidelines range.

*Hughes*, 138 S. Ct. at 1776. The Supreme Court explained:

> This interpretation furthers § 3582(c)(2)'s purpose, as well as the broader purposes of the Sentencing Reform Act. "The Act aims to create a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar conditions receive similar sentences." *Freeman*, 564 U.S., at 533, 131 S. Ct. 2685. . . [T]here is no reason a defendant's eligibility for relief should turn on the form of his plea agreement.

*Hughes*, 138 S. Ct. at 1776–77.

As I noted in the previous section, § 3582(c)(2) is not the basis for relief in this case. Rather, § 3582(c)(2) reductions are a somewhat-analogous type of sentence reduction whose precedents may inform the court regarding reductions under the First Step Act. The question is whether the interaction between a Rule 11(c)(1)(C) plea agreement and a reduction pursuant to § 3582(c)(2) is similar enough that I should analyze this FSA dispute in the same way.[4] I believe I should, for two reasons. The first is based on the rationale described in *Hughes*, which is that the guidelines remain the basis for most federal drug sentences, even those imposed pursuant to Rule 11(c)(1)(C) plea agreements, and, when given the opportunity to reduce sentences, courts should strive to

---

[4] I have found few cases that have analyzed this exact situation. The most similar fact pattern appears in *United States v. Higgins*, 2019 WL 2527562, at *3 (E.D. Tenn. June 19, 2019). The defendant in that case was indicted for an offense whose penalties were subsequently lowered by the Fair Sentence Act, he plead guilty pursuant to a Rule 11(c)(1)(C) deal, and the Government agreed to forgo a § 851 enhancement. Earlier this year, the defendant filed an FSA motion. However, the *Higgins*' court relied on 18 U.S.C § 3553(a) factors to deny FSA relief, and avoided an in-depth discussion of the *Hughes* type issue. Relevant to this case, the *Higgins*' court stated only that, "[t]he Court has also taken into consideration the significant concessions made by the government in dismissing certain charges and withdrawing its § 851 enhancement, and the related need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment." *Higgins*, 2019 WL 2527562, at *3.

avoid unwarranted disparities. The second reason is more practical. Specifically, the parties have identified no alternate analytical framework to use to decide a case such as this, where a statutory range reduction may impact a sentence imposed pursuant to Rule 11(c)(1)(C) plea agreement, nor have I discovered one.[5]

The question becomes whether the guidelines were the basis of defendant's sentence. I find that they were not. At the time he was sentenced, defendant was subject to a ten-year mandatory minimum term of imprisonment, with a guideline range between 121 to 151 months. Despite that, he agreed to a sentence of 200 months, almost fifty months about the top of the guideline range. The agreed sentence was based neither on the guidelines nor the statutory range. Rather, it was based on a negotiated plea agreement that included the Government's promise to forgo a § 851 enhancement, which would have doubled the mandatory minimum sentence to 240 months. The 200-month sentence is between the ten-year mandatory minimum that applied without the § 851 enhancement and the twenty-year mandatory minimum that would have applied with the § 851 enhancement. Basically, defendant agreed to accept a 200 month sentence to avoid a 240 month sentence. This demonstrates that the sentence was based on a bargain struck between the parties, the specifics of which are not available for the court to review.

In her concurring opinion in *Hughes*, Justice Sotomayor anticipated this type of situation and stated:

> I am sensitive to the Government's contention that allowing criminal defendants to obtain reductions of Type–C sentences under § 3582(c)(2) might deprive the Government of the benefit of its bargain. Brief for United States 52. But, as the majority persuasively explains, that argument "has nothing to do with whether a defendant's sentence was based on the Sentencing Guidelines under § 3582(c)(2)" and therefore has no bearing on whether a defendant who has entered into a Type–C agreement is eligible for a sentence reduction. *Ante*, at 1777; *see Freeman*, 564 U.S., at 532,

---

[5] Obviously, to make the framework work, a guideline reduction must be replaced with a statutory range reduction.

> 131 S. Ct. 2685 (plurality opinion) ("What is at stake … is a defendant's eligibility for relief, not the extent of that relief"). All that said, there may be circumstances in which the Government makes substantial concessions in entering into a Type–C agreement with a defendant—*e.g.*, by declining to pursue easily proved and weighty sentencing enhancements—such that there is a compelling case that the agreed-upon sentence in the Type–C agreement would not have been affected if the subsequently lowered Guidelines range had been in place at the relevant time. If such circumstances exist, I expect that district courts will take that into account when deciding whether, and to what extent, a Type–C sentence should be reduced under § 3582(c)(2). *See ante*, at 1777 - 1778.

*Hughes*, 138 S. Ct. at 1780, fn. 2. (Sotomayor, J. concurring). I find Justice Sotomayor's comments to be persuasive and to apply squarely here. The agreed-to sentence in this case was based, at least to a significant extent, on the Government's agreement to forgo the § 851 enhancement. Granting relief in this case would require me to speculate about what factors, calculations and assessments of risk went into the plea negotiations and resulted in the agreed sentence. Because that sentence was not based on the guideline range, any effort to recalculate that sentence based on a retroactive application of the Fair Sentencing Act would require pure conjecture on my part. As such, I conclude that I must deny defendant's motion (Doc. No. 96). *See United States v. Spencer*, 2019 WL 3369794, at *2 (D. Minn. July 26, 2019) ("granting a First Step Act motion is left to the discretion of the court.").

## VI.    CONCLUSION

For the reasons set out above, defendant's motion for a sentence reduction pursuant to the First Step Act (Doc. No. 96) is **denied**.

**IT IS SO ORDERED.**

**DATED** this 20th day of August, 2019.

_____

Leonard T. Strand, Chief Judge